IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

|  |  |
|---|---|
| SCOTT M. ANDERSEN, an individual,<br><br>   Plaintiff,<br><br>v.<br><br>HOMECOMINGS FINANCIAL, LLC F/K/A HOMECOMINGS FINANCIAL NETWORK, INC., Deleware limited liability company; AURORA LOAN SERVICES, LLC, a limited liability company; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Deleware corporation; JAMES H. WOODALL, an individual; and DOES 1-10,<br><br>   Defendants. | ORDER ON PENDING MOTIONS<br><br><br><br>Case No. 2:11-CV-332-TS<br><br>Judge Ted Stewart |

This matter is before the Court on Plaintiff Scott Andersen's ("Plaintiff") Motion for Injunctive Relief, Motion for Sanctions, and Motion to Remand.[1] Also before the Court are Defendants James Woodall ("Woodall") and Aurora Loan Services LLC's ("Aurora") (collectively, "Defendants") Motions to Dismiss.[2] For the reasons set forth below, the Court will deny Plaintiff's Motions and grant Defendants' Motions to Dismiss.

---

[1] Docket Nos. 9 & 14.

[2] Docket Nos. 4 & 7.

1

## I. STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[3] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[4] All well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party.[5] But, the court "need not accept . . . conclusory allegations without supporting factual averments."[6] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[7] The Supreme Court has explained that a plaintiff must "nudge[ ][his] claims across the line from conceivable to plausible" to survive a motion to dismiss.[8]

> Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.[9]

---

[3] *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[5] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[6] *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[7] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[8] *Twombly*, 550 U.S. at 547.

[9] *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Supreme Court recently provided greater explanation of the standard set out in *Twombly* in *Ashcroft v. Iqbal*.[10] In *Iqbal*, the Court reiterated that while FED.R.CIV.P. 8 does not require detailed factual allegations, it nonetheless requires "more than unadorned, the-defendant-unlawfully harmed-me accusation[s]."[11] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[12] "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[13]

The Court in *Iqbal* stated:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should

---

[10] 129 S.Ct. 1937 (2009).

[11] *Id.* at 1949.

[12] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[13] *Id.* (quoting *Twombly*, 550 U.S. at 557).

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[14]

In considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[15] Thus, "notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, '[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[16]

## II. BACKGROUND

Plaintiff's Amended Complaint alleges that, on October 16, 2006, Plaintiff executed a Promissory Note (the "Note") with Homecomings in order to refinance property located in Orem, Utah.[17] The Note named Homecomings as the lender and Plaintiff granted Homecomings a deed of trust (the "Deed of Trust") in conjunction with the note that was recorded on the property on November 13, 2006.[18] The Deed of Trust identifies Plaintiff as "Borrower," Homecomings as "Lender," Lawyers Title as "Trustee," and Mortgage Electronic Registration

---

[14]*Id.* at 1949-50 (internal quotation marks and citations omitted).

[15]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 and Supp. 2007)).

[16]*Alvarado v. KOBTV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[17]Docket No. 2-1, at 3.

[18]*Id.*

Systems, Inc. ("MERS") as "nominee for Lender and Lender's successors and assigns" and as "the beneficiary under this Security Instrument."[19] The Deed of Trust states:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender.[20]

Plaintiff alleges that in March of 2009 he contacted Aurora seeking a loan modification. According to Plaintiff, Aurora represented to him that in order to obtain a loan modification he should stop making payments on his loan. Plaintiff stopped making loan payments in March 2009 and began the loan modification process in May 2009. Plaintiff was initially denied a loan modification for "inability to afford the monthly payments" on July 1, 2009.[21] Subsequently, Plaintiff alleges that he received a notice of default and contacted Aurora's customer service to once more seek a loan modification.

Plaintiff received his first Special Forbearance Agreement ("SFA") on July 24, 2009. Plaintiff made one payment under this first SFA in August of 2009. The next month Plaintiff was informed that he had missed a trial period payment and, as a result, was again denied a loan modification. Plaintiff continued this same loan modification process with Aurora through June of 2010. Plaintiff received and made the first payment on three separate SFAs but failed to complete payment under any of the SFAs.

---

[19]Docket No. 15, Ex. B, at 1-2.

[20]*Id.* at 11-12.

[21]Docket No. 2-1, at 19.

On July 10, 2009, MERS recorded a "Substitution of Trustee" appointing Woodall as the successor trustee under the Deed of Trust.[22] On the same day Woodall recorded a notice of default indicating that Plaintiff was in default on his obligations under the Deed of Trust.[23] On December 23, 2010, MERS recorded a "Corporate Assignment of Deed of Trust" assigning Homecomings' interest in the Deed of Trust to Aurora.[24]

Plaintiff filed suit against Defendants on February 5, 2011, in the Fourth Judicial District Court–Provo Department in and for Utah County, State of Utah. On March 11, 2011, the state court entered an order temporarily enjoining the Defendants from conducting a trustee's sale or recording any trustee's deed against the Property ("the TRO") pending an evidentiary hearing to be held March 21, 2011.[25] There is some dispute as to whether all the Defendants were notified of the TRO, though it appears that Woodall was notified by both Plaintiff's counsel and the state court of the TRO.

Subsequently, on March 14, 2011, Woodall proceeded with the trustee's sale enjoined by the TRO. On March 21, 2011, the state court held a hearing and addressed the improper trustee's sale. As a result of this hearing, Woodall executed and recorded a "Rescission of Trustee's Deed."[26] Plaintiff alleges that in spite of the TRO and hearing, on March 25, 2011,

---

[22]Docket No. 15, Ex. C.

[23]*Id.* at Ex. D.

[24]*Id.* at Ex. G.

[25]Docket No. 10, Ex. 2.

[26]Docket No. 15, Ex. I.

Defendant Aurora caused a five day notice to vacate the subject property to be served on Plaintiff's 14 year old child.[27] On March 13, 2011, Defendants sought removal to this Court.

III. DISCUSSION

A. REMAND

Plaintiff asserts that jurisdiction before this Court is improper because Woodall is a Utah citizen and moves the Court to remand this case to state court. Defendants assert that jurisdiction is proper before this Court because Woodall is a only a nominal party and was fraudulently named as a defendant to avoid diversity jurisdiction.

"Generally, because federal courts are courts of limited jurisdiction, there is a presumption against the existence of federal jurisdiction."[28] Defendants, as the parties invoking the jurisdiction of the Court "ha[ve] the burden of pleading and proving the existence of jurisdiction."[29] Defendants may remove any civil action brought in a state court of which the district courts of the United States have original jurisdiction.[30] Federal courts have diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states.[31] "It has long been the rule that to satisfy the

---

[27]Docket No. 10, Ex. 3.

[28]*Purdy v. Starko*, 2010 WL 3069850, at *2 (D. Utah Aug. 4, 2010) (citing *City of Lawton, Okla. v. Chapman*, 257 F.2d 601 (10th Cir. 1958)).

[29]*Wilshire Oil. Co. of Tex.v. Riffe*, 409 F.2d 1277, 1282 (10th Cir. 1969).

[30]28 U.S.C. § 1441(a).

[31]28 U.S.C. § 1332.

diversity of citizenship requirement of 28 U.S.C. § 1332(a)(1) the plaintiffs and defendants must be completely diverse: No plaintiff can be a citizen of the same state as any defendant."[32]

As Plaintiff asserts, Woodall is a citizen of the State of Utah. Defendants argue, however, that Woodall is a nominal party and was fraudulently joined to prevent removal and, therefore, the case was properly removed.

In *Navarro Savings Association v. Lee*, the United States Supreme Court held that "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy."[33] For this reason, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."[34] Other courts have found that "a trustee under a deed of trust is merely a formal party, because he is 'little more than an agent, albeit for both parties, and the writing prescribes his duties.'"[35]

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."[36] The doctrine of fraudulent joinder provides that "joinder of a resident defendant against whom no cause of action is pled, or against whom there is in fact

---

[32]*Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1095-96 (10th Cir. 2003) (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)).

[33]*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980) (citing *McNutt, for Use of Leggett v. Bland*, 43 U.S. 9, 15 (1844)).

[34]*Id.*

[35]*Jeanes-Kemp, LLC v. Johnson Controls, Inc.*, 2010 WL 502698, at *1 (S.D. Miss. Feb. 5, 2010) (quoting *Wansley v. First Nat'l Bank of Vicksburg*, 566 So. 2d 1218, 1223 (Miss. 1990)).

[36]*Purdy*, 2010 WL 3069850, at *2 (quoting *Kan. State Univ. v. Prince*, 673 F. Supp. 2d 1297, 1294 (D. Kan. 2009)).

no cause of action, will not defeat removal."[37] The Tenth Circuit recently considered the doctrine of fraudulent joinder in the case of *Montano v. Allstate Indeminity*.[38] The court held that:

> The case law places a heavy burden on the party asserting fraudulent joinder. A representative example states: To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against the joined party in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.[39]

Thus, to prove fraudulent joinder, Defendants must demonstrate that Plaintiff can prove no valid cause of action against Woodall. The question of whether Plaintiff could establish a claim against Woodall in state court is resolved by reference to Utah law.

Plaintiff's Complaint only includes one cause of action against Woodall. In Plaintiff's first claim he alleges that Defendants violated the terms of the Deed of Trust and the requirements of Utah's non-judicial foreclosure statute. Plaintiff alleges that Woodall's substitution by MERS as trustee was an unlawful substitution under the Deed of Trust and Utah foreclosure law and, thus, Woodall had no authority to record the notice of default.

This Court has considered this same claim previously in *Burnett v. Mortgage Electronic Registration Systems, Incorporated*.[40] The plaintiff in that case also brought a declaratory

---

[37]*Roe v. Gen. Life Ins. Co. & Phillips Petroleum Co.*, 712 F.2d 450, 452 (10th Cir. 1983) (citing *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

[38]211 F.3d 1278 (10th Cir. 2000) (unpublished).

[39]*Id*. at *1 (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000).

[40]2009 WL 3582294, at *5 (D. Utah Oct. 27, 2009).

9

judgment claim based on Utah law and "premised on the assumption that MERS was without authority to initiate foreclosure proceedings and to appoint Woodall successor trustee."[41] In *Burnett*, the Court held that "the language in the Deed of Trust clearly grants MERS the authority to exercise the full ambit of authority possessed by the Lender" and dismissed plaintiff's request for declaratory judgment. Here, Plaintiff's Deed of Trust contains the same language as the deed of trust in *Burnett*.[42] Thus, the Court finds, based on this precedent, that MERS had authority to appoint Woodall as a successor trustee.

Because Woodall was properly appointed as a successor trustee, Plaintiff cannot maintain a cause of action against Woodall and the Court finds that Woodall was fraudulently joined as a defendant. Moreover, in accordance with other courts that have considered this same issue, the Court finds that Woodall, as a trustee joined as a party merely because he occupies the position pursuant to a deed of trust, is a nominal party.[43] Therefore, complete diversity existing, the Court will deny Plaintiff's Motion to Remand.

B. INJUNCTION

As a preliminary matter, Plaintiff argues that "[p]ursuant to 28 U.S.C. § 1450 and FED.R.CIV.P. 65, the TRO entered by [the state court] prior to the case's removal shall remain in effect."[44] The Court notes that "[s]ection 1450 permits transfer to the federal court of state court

---

[41]*Id*.

[42]*See id.* at 1; *see also* Docket No. 15, Ex. B, at 11-12.

[43]*See Morgan v. Chase Home Fin., LLC*, 306 Fed. App'x 49, 52-53 (5th Cir. 2008); *Cantor v. Wachovia Mortg., FSB*, 641 F. Supp. 2d 602, 609-11 (N.D. Tex. 2009); *AOM Grp., LLC v. Wells Fargo Bank, NA*, 2010 WL 3342010, at *2 (D. Ariz. Aug. 25, 2010); *Wygal v. Litton Loan Servicing, LP*, 2009 WL 2524701, at *5 (S.D. W.Va. Aug. 18, 2009).

[44]Docket No. 10, at 4.

restraining orders without any loss of potency."[45] However, "[s]ection 1450 does not create a special breed of temporary restraining orders that survive beyond the life span imposed by state law . . . and beyond the life that the district court could have granted them . . . ."[46] "Thus, unless a [TRO] is extended, it expires no later than 10 days after the date of removal."[47]

Plaintiff also asserts that "Defendants should be permanently enjoined from foreclosing during the pendency of this case based upon their willful violation of the [state court's] [TRO] and the [state court's] March 21, 2011 Order."[48]

> To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.[49]

Having reviewed the allegations contained in his Complaint, as well as the arguments made in his Memorandum, as well as Defendants' Memorandum in Opposition, the Court finds that Plaintiff has failed to demonstrate a substantial likelihood of success on the merits. Merely arguing that his claims are meritorious and that Defendants have caused him a harm does not

---

[45]*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda Cnty., Intern. Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of Am.*, 472 F.2d 764, 766 (9th Cir. 1973), *cert granted* 414 U.S. 816, *aff'd* 415 U.S. 423.

[46]*Id.*

[47]*Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1183 (N.D. Cal. 2009).

[48]Docket No. 10, at 4.

[49]*Gen. Motor Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (Utah 2007) (citing *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003)).

11

satisfy the requirements for a preliminary injunction. Therefore, the Court will deny Plaintiff's Motion for Injunctive Relief.

C.     SANCTIONS AND MISCELLANEOUS

Plaintiff requests that the Court require that Defendants "post a judicial bond in the amount of $2500 to cover Plaintiff's attorney's fees to show good faith in abiding by the orders of this Court."[50] Under FED.R.CIV.P. 11, "[i]f there is a violation the court can sanction the lawyer, the client, or both."[51] In this case however, Plaintiff's Motion for Sanction fails to comply with Rule 11's procedural requirements. To comply with Rule 11, a motion for sanctions must be made separately from any other motion and the motion must be served on the opposing party twenty-one days before it was filed with the Court.[52] Plaintiff failed to comply with either of these requirements. Because Plaintiff failed to comply with Rule 11's procedural requirements, the Court will deny his Motion for Sanctions.

Moreover, Plaintiff requests that the Court substitute the name "Mr. Macdonald" for "Mr. Spencer" in the Affidavit of Taralyn Jones attached as exhibit A to Plaintiff's Reply to Response for Motion for Sanctions. The Court will grant Plaintiff's Motion to Amend.

The Court also notes that Plaintiff has improperly filed a sur-reply to Defendants' Reply to Response to Motion to Dismiss.[53] This Court has previously held that, "Utah Federal Courts allow three types of memoranda relating to a motion for summary judgment: (1) a memorandum

---

[50]*Id.* at 7.

[51]*White v. Gen. Motor Corp., Inc.*, 908 F.2d 675, 679 (10th Cir. 1990).

[52]*See Diamonds.net LLC v. Idex Online, Ltd.*, 254 F.R.D. 475, 476 (S.D. N.Y. 2008).

[53]*See* Docket No. 25.

in support, (2) a memorandum in opposition, and (3) a reply. No additional memoranda will be considered without leave of court."[54] Utah Federal Court Rules allow the same number of memoranda for motions to dismiss as for summary judgment motions.[55]

Because Plaintiff's response is not in compliance with Utah Federal Court Rules for filing memorandum and because Plaintiff did not seek the Court's permission to avoid compliance, Plaintiff's second memorandum is stricken. It is further noted that the Court reviewed Plaintiff's sur-reply and the arguments included therein had no impact on the Court's determination of this case.

D.  JUDICIAL NOTICE

Plaintiff and Defendants request that the court notice various documents which they assert are relevant to the motions before the Court. "Judicial notice is proper only if a fact is commonly known to the community and is, therefore, indisputable, or if it is readily determined by reference to incontestable sources."[56]

Defendants request that the Court take judicial notice of various documents referencing the subject property, all of which have been recorded in the official records of Utah County.[57] All of the documents which Defendants seek to have judicially noticed, Plaintiff references in his Complaint. Further, the documents are central to Plaintiff's claims as the majority of Plaintiff's

---

[54]*Anastasion v. Credit Serv. of Logan, Inc.*, 2010 WL 2754846, at *1 (D. Utah July 12, 2010) (citing *Orient Mineral v. Bank of China*, 2010 WL 624868, at *2 (D. Utah Feb 19, 2010)).

[55]DUCivR 7-1(b)(3).

[56]*Wade v. Meridias Capital, Inc.*, 2011 WL 997161, at *1 (D. Utah Mar. 17, 2011) (citing Fed.R.Evid. 201(b)).

[57]Docket No. 6, at 2.

claims are based upon his interpretation of these documents. Also, Plaintiff does not dispute the authenticity of these documents. For these reasons, the Court grants Defendants' requests for judicial notice of the Warranty Deed, Deed of Trust, Substitution of Trustee, Notice of Default, and Corporate Assignment of Deed of Trust.

Plaintiff requests that the Court take judicial notice of various news stories generally related to foreclosures. This request for judicial notice is improper because the content in the articles and the assertions Plaintiff seeks to prove through the articles are directly disputed in this matter. Further, the Court has no way to verify the accuracy of the articles and the content of the articles is not commonly known in the community. The Court declines to take judicial notice of Plaintiff's news articles.

E.   WOODALL'S MOTION TO DISMISS

Defendant Woodall moves this Court pursuant to FED.R.CIV.P. 12(b)(6) to dismiss Plaintiff's claim for failure to state a claim upon which relief can be granted. As previously discussed, Plaintiff has only alleged one cause of action against Woodall. Plaintiff alleges that Woodall's substitution by MERS as trustee was an unlawful substitution under the Deed of Trust and Utah foreclosure law, and, thus, Woodall had no authority to record the notice of default. Because the Court has already found above that this allegation is invalid, the Court grants Woodall's Motion to Dismiss.

F.   AURORA AND MERS' MOTION TO DISMISS

Defendants Aurora and MERS move this Court to dismiss Plaintiff's first through fifth causes of action for failure, both as a matter of law and fact, to state a cause of action against Defendants. Plaintiff contends that his Complaint alleges the facts and sets forth a legal basis for

an available legal remedy and, therefore, adequately states a claim upon which relief may be granted.

1.   DECLARATORY JUDGMENT

Plaintiff's first cause of action for declaratory judgment relies upon Plaintiff's argument that "[w]hile a validly-appointed trustee may exercise the non-judicial power of sale, MERS cannot, despite its claim to be the beneficiary, nominee and /or legal-title holder of the Trust Deed."[58] This argument has been addressed extensively above and will be dismissed.

2.   BREACH

Plaintiff's second cause of action for breach of the duty of good faith and fair dealing also relies upon the assertion that MERS cannot validly exercise the non-judicial power of sale. Plaintiff argues that "[t]he grant of authority to MERS is an adhesion contract when it was not bargained for by Plaintiff but included in the Trust Deed by Lender, who had a superior bargaining position."[59] Plaintiff argues that "[t]he grant of authority to MERS is unconscionable and/or an adhesion contract," because Plaintiff was never given a reasonable opportunity to meaningfully negotiate the meaning and role of MERS in the contract.[60]

This Court recently held in *Wade v. Meridias Capital, Inc*., that a trust deed provision transferring interest to MERS is not an adhesion contract and is not unconscionable.[61] The Court reasoned that "'[s]imply because the terms of a contract are embodied in written form developed

---

[58]Docket 2-1, at 27.

[59]*Id*. at 31.

[60]*Id*.

[61]2011 WL 997161 (D. Utah Mar. 17, 2011).

15

by one of the parties does not automatically render it either a contract of adhesion or unenforceable and one party to a contract does not have a duty to ensure that the other has a complete and accurate understanding of all terms embodied in a written contract.'"[62] In this case, there is no indication that Plaintiff was forced to sign the Note and Deed of Trust with Homecoming. Also, there is no allegation that the "MERS designation is so grossly one-sided that it 'shock[s] the conscience' or leaves the Court with a profound sense of injustice."[63] Based on this precedent, the Court will dismiss Plaintiff's second claim.

    3.    FRAUDULENT INDUCEMENT

Plaintiff's third cause of action is against Defendant Aurora and includes a claim for fraudulent inducement with regards to the loan modification process. Plaintiff asserts that Aurora fraudulently, carelessly, or negligently represented that he should stop making payments on his mortgage in order to obtain a loan modification. Defendant Aurora contends that Plaintiff's claims for fraudulent inducement fail as the purported misrepresentation does not involve a presently existing material fact and there is no inducement.

Because the Court is sitting in diversity jurisdiction it applies Utah law "with the objective of obtaining the result that would be reached in state court."[64] To prove fraudulent inducement under Utah law, Plaintiffs must establish as follows:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon

---

[62]*Id*. at *2 (quoting *Russ v. Woodside Homes, Inc*., 905 P.2d 901, 906 n.1 (Utah Ct. App. 1995)).

[63]*Id*. (quoting *Woodhaven Apts v. Washington*, 942 P.2d 918, 925 (Utah 1997)).

[64]*Butt v. Bank of Am., NA*, 477 F.3d 1171, 1179 (10th Cir. 2007).

16

which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[65]

Because this is a claim for fraud Plaintiff must also meet the pleading requirements of Federal Rule of Civil Procedure 9(b), which "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."[66]

Defendants assert that Plaintiff has not met these requirements. Defendants argue that the alleged misrepresentation, that if Plaintiff stopped making his loans he would qualify for a loan modification, is a statement regarding a future action, not a presently existing material fact. Plaintiff's claim for fraudulent inducement is premised on the alleged representation by Aurora that Plaintiff should stop making his payments in order to qualify for a loan modification. Taking this allegation as true, this fact alone does not demonstrate a representation sufficient to satisfy the high pleading bar for fraudulent misrepresentation.

In his opposition, Plaintiff recognizes the weakness of this argument and attempts to add facts and allegations to create a presently existing material fact. Plaintiff argues that "Defendants represented that [Plaintiff] needed to stop making payments to obtain a loan modification and told [Plaintiff] that it would only take thirty (30) days to complete his evaluation. After thirty days, [Plaintiff] could have reinstated his loan or made efforts to become current."[67] Plaintiff did not allege a promise of completion in 30 days in his Amended

---

[65]*Daines v. Vincent,* 190 P.3d 1269, 1279 (Utah 2008) (quoting *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003)).

[66]*U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (internal quotations and citations omitted).

[67]Docket No. 22, at 5.

17

Complaint and the assertion that Plaintiff would have returned to paying under the loan or become current directly contradicts the alleged facts in Plaintiff's Amended Complaint.

Plaintiff has not pled facts sufficient to support his broad accusation that "Aurora has shown a pattern of fraudulent behavior in inducing homeowners into default and fraudulently denying homeowners of the opportunity to get the loan modification for which they qualify."[68] Nor can Plaintiff meet the heightened pleading requirement for fraud to demonstrate that "Aurora's loan modification process is designed to enrich Aurora financially at the expense of [Plaintiff], as [Aurora] collect[s] additional fees and late payments while [Plaintiff] gets no benefit."[69] For the foregoing reasons, the Court finds that Plaintiff has not pled facts sufficient to support his fraudulent inducement allegation.

    4.    HAMP

Plaintiff's fourth cause of action asserts that Aurora did not act in good faith in considering Plaintiff for a loan modification under the HAMP program. The Court will dismiss this claim because it has repeatedly held that HAMP does not authorize a private right of action, nor are "HAMP-based claims, disguised as other claims, such as breach of contract . . . cognizable."[70]

---

[68] Docket No. 2-1, at 33.

[69] *Id.*

[70] *Terry v. IndyMac Mortg. Servs.*, 2011 WL 2112033, at *1 (D. Utah May 26, 2011) (citing *Shurtliff v. Wells Fargo Bank, NA*, 2010 WL 4609397, at *3 (D. Utah Nov. 5, 2010); *Marks v. Bank of Am., NA*, 2010 WL 2572988, at *5-6 (D. Ariz. June 22, 2010)).

5.    NEGLIGENT MISREPRESENTATION

Plaintiff alleges "Aurora carelessly or negligently represented that Plaintiff should stop making payments on his mortgage to seek a loan modification and the delayed process of seeking a loan modification resulted in the delinquency on Plaintiff's loan to continue to grow to a point that he could not avoid foreclosure."[71] Defendants contend that this claim fails because it is barred by the economic loss rule.

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[72]

> The economic loss rule serves two purposes. First, it bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury. Second, the economic loss rule prevents parties who have contracted with each other from recovering beyond the bargained-for risks.[73]

Here, Defendants cannot be held liable for performing under the Note and Deed of Trust. Further, Plaintiff cannot recover beyond the bargained for risks as contained in the Note and Deed of Trust. Moreover, the Court notes that Aurora went beyond their obligation as contained in the Note and Deed of Trust and granted Plaintiff three separate SPA's. Plaintiff failed to complete payment under any of the SPA's. Plaintiff claims to have relied upon Aurora's

---

[71] Docket 2-1, at 35-36.

[72] *SME Indus., Inc. v. Thompson, Ventulett, Stainback and Assocs., Inc.*, 28 P.3d 669, 679 (Utah 2001).

[73] *Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010) (internal quotations omitted).

19

representation that he would be granted a loan modification to his detriment, and yet, Plaintiff did not fulfill his obligations. Instead, Plaintiff has engaged in a deliberate process of delay which has caused his loan principal to grow and his home to enter foreclosure.

Plaintiff cannot now claim that he reasonably relied upon Aurora's negligent misrepresentations, nor can he allege physical damages to himself, or his physical property. As such, Plaintiff's sixth cause of action is barred by the economic loss rule and fails to allege a claim for which relief may be granted.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Injunctive Relief, Sanctions and Motion to Remand (Docket No. 9) is DENIED. Plaintiff's Motion to Amend (Docket No. 23) and Homecomings' Motion for Joinder (Docket No. 27) are GRANTED. Furthermore, Defendants' Motions to Dismiss (Docket Nos. 4 & 7) are GRANTED and claims 1-5 of Plaintiff's Complaint are dismissed with PREJUDICE. The Court notes that Plaintiff's sixth cause of action against Homecomings is still pending as neither of Defendants' Motions to Dismiss addressed that claim.

DATED   June 20, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge